In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3940

GORDON E. SUSSMAN,

Petitioner-Appellant,

v.

LARRY JENKINS,

Respondent-Appellee.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 3:09-cv-00035-bbc—**Barbara B. Crabb**, *Judge*.

ON MOTION TO STAY THE MANDATE

APRIL 28, 2011[*]

RIPPLE, *Circuit Judge* (in chambers).  The State of Wisconsin has filed a motion to stay this court's mandate so that it may file a petition for a writ of certiorari in the Supreme Court of the United States. The State argues that there is a reasonable probability that four justices

---

[*] This opinion was released initially in typescript form.

will vote to grant certiorari and a reasonable possibility that five justices will vote to reverse this court's judgment. *See Books v. City of Elkhart*, 239 F.3d 826, 828 (7th Cir. 2001) (Ripple, J., in chambers). Moreover, the State believes that the balance of equities favors granting the stay in this case. For the reasons set forth in this chambers opinion, I deny the motion to stay the mandate.

# I

The State submits that it meets the requirement for likelihood of success on the merits—in this context, of obtaining a grant of certiorari and reversal of this court's decision—based on our failure to apply correctly, or at all, recent holdings of the Supreme Court. I conclude that the State misapprehends both the holdings of the Supreme Court and our opinion in this case.

## A.

The State first maintains that, because the panel did not apply AEDPA deference with respect to the performance prong of *Strickland v. Washington*, 466 U.S. 668 (1984), our decision is at odds with *Harrington v. Richter*, 131 S. Ct. 770 (2011). In *Harrington*, the Supreme Court first addressed whether AEDPA deference "applies when state-court relief is denied without an accompanying statement of reasons." *Id.* at 780. The Court held:

> Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden

> still must be met by showing there was no reason-
> able basis for the state court to deny relief. This
> is so whether or not the state reveals which of
> the elements in a multipart claim it found insuf-
> ficient, for § 2254 applies when a "claim," not
> a component of one, has been adjudicated.

*Id.* at 784.

There are several reasons why this passage from *Har-rington* is inapplicable to the present case. First, *Harrington* addresses the situation in which a state-court decision "is unaccompanied by an explanation." Here, the state appellate court issued an opinion and wrote: "We do not address whether counsel's performance was deficient because we conclude that, even assuming deficient performance, Sussman cannot show prejudice." R.5, Ex. B at 2. Seeking to invoke *Harrington*, the State asks that we treat this statement as a holding devoid of explanation that Mr. Sussman had failed to establish substandard performance. Clearly, however, the state court cannot both assume deficient performance and hold that counsel's performance was not deficient. Second, the Supreme Court in *Harrington* did not disturb its approach in *Wiggins v. Smith*, 539 U.S. 510 (2003). In *Wiggins*, the Court reviewed a state-court's determination of a *Strickland* issue. The state court had resolved the performance prong of the *Strickland* test against the petitioner and, therefore, had not addressed the prejudice prong. In evaluating the prejudice prong (after concluding that the state court's performance analysis was unreasonable), the Court stated: "In this case, our

review is not circumscribed by a state court conclusion with respect to prejudice, as neither of the state courts below reached this prong of the *Strickland* analysis." *Id.* at 534. As I have noted earlier, *Harrington* did not address such a situation and, therefore, left *Wiggins* intact. We certainly cannot assume that the Court overruled *sub silentio* its holding in *Wiggins*—a precedent so important to the daily work of the lower federal courts.

Finally, even if *Harrington* somehow signaled the Court's willingness to revisit *Wiggins*, the present case does not present it with a clear opportunity to do so. In *Sussman*, although the panel stated that it would not apply AEDPA deference to the performance prong, it also observed that, in this context, "[c]onsideration of [the performance prong] necessarily overlaps with our consideration of the prejudice prong of the *Strickland* analysis," *Sussman v. Jenkins*, No. 09-3940, 2011 WL 1206187, at *18 (7th Cir. Apr. 1, 2011), and, with respect to the prejudice prong, this court did apply AEDPA deference.

## B.

Relying on the Supreme Court's recent decision in *Premo v. Moore*, 131 S. Ct. 733 (2011), the State also submits that we exceeded the bounds of our review by evaluating, and disagreeing with, the rationale employed by the state court's rejection of Mr. Sussman's claim that he was prejudiced by his counsel's failure. According to the State, *Premo* prohibits a federal habeas

court from "go[ing] behind the state courts' 'no prejudice' determination." Motion to Stay at 7-8. I conclude that *Premo* has little relevance to this case.

In *Premo*, the Supreme Court considered "the adequacy of representation in providing an assessment of a plea bargain without first seeking suppression of a confession assumed to have been improperly obtained." *Premo*, 131 S. Ct. at 738. Specifically, Moore had been involved in a violent kidnapping; prior to the victim's release, Moore accidentally shot the victim. In addition to providing a confession to the police, Moore confessed to his brother and to his accomplice's girlfriend. Prior to accepting a plea bargain, Moore's counsel discussed the possibility of filing a motion to suppress the confession to the police, but "concluded that it would be unavailing, because . . . he had previously made a full confession to his brother and to [his accomplice's girlfriend]." *Id.* (internal quotation marks omitted) (alterations in original). Counsel also was concerned with the possibility of Moore's "being charged with aggravated murder, which carried a potential death sentence, as well as the possibility of a sentence of life imprisonment without parole." *Id.* Given these concerns, counsel advised Moore to accept a plea. "In light of these facts the Oregon court concluded Moore had not established ineffective assistance of counsel under *Strickland*." *Id.* A federal district court later denied Moore habeas relief, but a divided panel of the Court of Appeals for the Ninth Circuit reversed; it believed that "the state court's conclusion that counsel's action did not constitute ineffective assistance was an unreasonable application of

clearly established law in light of *Strickland* and was contrary to *Arizona v. Fulminante*, 499 U.S. 279 (1991)." *Id.* at 739 (parallel citations omitted).

The Supreme Court concluded that "[t]he Court of Appeals was wrong to accord scant deference to counsel's judgment, and doubly wrong to conclude it would have been unreasonable to find that the defense attorney qualified as counsel for Sixth Amendment purposes." *Id.* at 740. It noted that, although the *Strickland* standard is the same whether counsel's alleged missteps occurred "before, during, or after trial," "at different stages of the case that deference may be measured in different ways." *Id.* at 742. When evaluating counsel's actions in seeking an early plea bargain, the Court noted that habeas courts must consider the potential risks to the defendant in delaying a bargain, including "giv[ing] the State time to uncover additional incriminating evidence that could have formed the basis of a capital prosecution." *Id.* The Court then concluded, "In these circumstances, and with a potential capital charge lurking, Moore's counsel made a reasonable choice to opt for a quick plea bargain. At the very least, the state court would not have been unreasonable to so conclude." *Id.* at 742-43. The Court then went on to observe that the Ninth Circuit had erred in holding that the Oregon state court's conclusion on the reasonableness of counsel's actions was "contrary to" *Fulminante*, which did not concern the *Strickland* standard at all, but involved "the admission of an involuntary confession in violation of the Fifth Amendment," *id.* at 743 (internal quotation marks omitted); indeed, the Court believed

that the Ninth Circuit had misconstrued *Fulminante* itself, *see id.* at 744.

This case does not concern, of course, a plea bargain, and, therefore, neither counsel's actions nor the state court's ruling must be evaluated "in light of the uncertainty inherent in plea negotiations." *Id.* at 743. More fundamentally, here there was a clear relationship, on the record, between the *Strickland* standard and the state court's ruling on "futility." The state court held, and indeed, explained, that Mr. Sussman had not suffered any prejudice under *Strickland* because his motion to admit evidence would not have been successful. This estimation was based on a misapprehension of federal law, namely the Supreme Court's Confrontation Clause jurisprudence. Nothing in *Premo* suggests that, when a state court makes an error of federal constitutional law that necessarily affects its *Strickland* calculus, a federal court should ignore that error in evaluating the reasonableness of the state-court action.

The State faults this aspect of our opinion on another ground. The State maintains that, in assessing the state court's actions, we looked to our own case, *United States v. Redmond*, 240 F.3d 590 (7th Cir. 2001), rather than to Supreme Court precedent. The state misreads the text of our opinion. In the opinion, we rely—explicitly—not only on *Redmond*, but on the Supreme Court cases cited by *Redmond*—*Davis v. Alaska*, 415 U.S. 308 (1974), *Delaware v. Van Arsdall*, 475 U.S. 673 (1986), and *Olden v. Kentucky*, 475 U.S. 673 (1986). *See Sussman*, 2011 WL 1206187, at *24.

The State believes that this is especially egregious because "the Wisconsin Court of Appeals and the dis-

trict court never squarely addressed the separate Confrontation Clause challenge because Sussman chose only to present them with a *Strickland* challenge." Motion to Stay at 9. The State accuses this court of raising and writing the "winning Confrontation Clause argument . . . without ever giving the respondent a fair opportunity to address it." *Id.* However, as we noted at several points in our opinion, Mr. Sussman presented to the state courts the potential Confrontation Clause problems raised by the trial court's failure to allow him to elicit testimony on the complainant's alleged prior false allegations of sexual abuse. *See Sussman*, 2011 WL 1206187, at *13 & n.15; *id.* at *15 & n.16. Mr. Sussman did not fail to raise the issue; the state courts failed to address it.

Moreover, in its brief to this court, the State acknowledges Mr. Sussman's efforts to raise the issue before the district court: "Sussman relies heavily on this court's decision in *Redmond v. Kingston*, 240 F.3d 590 (7th Cir. 2001)." Appellee's Br. 45 n.5. Rather than addressing Mr. Sussman's contentions, however, the State merely responded: "As Magistrate Judge Crocker aptly observed, that case has almost nothing to do with this one. There are 'profound differences' between the *Redmond* Confrontation Clause case and this ineffective assistance case." *Id.* (internal citations omitted).

Finally, I note that, despite the State's view of the alleged serious overreaching by the panel, the State did not choose to bring this issue to the panel by way of a petition for rehearing, or to the whole court by way of a petition for rehearing en banc.

## C.

The State also faults us for "scour[ing] the state court record for 'arguments['] . . . that undermined, rather than 'supported'" the state court's decision. Motion to Stay at 10. The State believes that this approach, which it attributes to us, is inconsistent with *Harrington*'s approach that requires a habeas court to "determine what arguments or theories supported . . . the state court's decision . . . and then . . . ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id.* (quoting *Harrington*, 131 S. Ct. at 786).

This is not a fair comment on our decision. As noted earlier, our main problem with the state court's analysis of the prejudice prong was that it was based on a misapprehension of the injury done to the Confrontation Clause rights of Mr. Sussman. With respect to this issue, we considered whether the state court reasonably could have read the Court's Confrontation Clause jurisprudence so as to disallow the testimony that Mr. Sussman sought to elicit. *See Sussman*, 2011 WL 1206187, at *23-24. We went further, however, and assessed whether, assuming a correct estimation of Mr. Sussman's federal right, the result reached by the Wisconsin court nevertheless could be sustained. A fair reading of our opinion demonstrates that we simply examined at length the possible arguments that might support the state court's decision and concluded that those arguments were unconvincing. *See id.* at *24-27.

## II

The burden is on the party seeking a stay to establish that it will suffer irreparable injury. *Books*, 239 F.3d at 827. The State submits that Mr. Sussman is likely to reoffend and, therefore, continuing his incarceration is necessary both to protect the citizens of Wisconsin and to prevent his fleeing the jurisdiction. These are both very important interests; however, the State stops short of showing how these interests will be thwarted if the stay is not granted. Notably, the State has not stated affirmatively that, during the pendency of the petition for certiorari, Mr. Sussman will go free despite his sentences on sixteen child pornography counts. Furthermore, should he be released from state confinement on those counts, the State acknowledges that "[h]is chances of convincing the state courts to release him on bail pending retrial would be problematic at best." Motion to Stay at 14. Even if Mr. Sussman were to have completed his sentences for the child pornography counts and, furthermore, were to convince a state-court judge to release him pending retrial, he still would be under the supervision of the State of Wisconsin as a registered sex offender.

For these reasons, the motion to stay is denied.

IT IS SO ORDERED.