HELENE N. WHITE, Circuit Judge,
concurring in part and dissenting in part.
Because I conclude that the Tennessee courts unreasonably applied Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), I respectfully dissent from Part III of the majority opinion.
A. Performance
The Supreme Court has explicitly approved using ABA Guidelines on attorney performance in effect at the time of a defendant’s trial as .“guides to determining what is reasonable” performance by counsel. Padilla v. Kentucky, 559 U.S. 356, 130 S.Ct. 1473, 1482, 176 L.Ed.2d 284 (2010); Rompilla v. Beard, 545 U.S. 374, *546 387, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005); Wiggins v. Smith, 539 U.S. 510, 524, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); see also Bobby v. Van Hook, 558 U.S. 4, 7, 130 S.Ct. 13, 175 L.Ed.2d 255 (2009) (per curiam). “ABA Guidelines are not ‘inexorable commands’; rather, they are ‘only guides to what reasonableness means, not its definition.’ ” Post v. Bradshaw, 621 F.3d 406, 418 (6th Cir.2010) (quoting Bobby, 130 S.Ct. at 17) (some internal quotation marks omitted). As discussed by the majority, the 1989 ABÁ Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases,[1] which were in effect at the time of Hodges’s 1992 trial, disapprove entering a guilty plea in a capital case without the prosecution’s agreement not to seek the death penalty in exchange for the guilty plea. The Guidelines state that “[i]t is suggested that [pleading a client guilty and then putting on a contested penalty hearing] is an effective strategy only when the attorney knows without any doubt that no death sentence will result. Any other ‘strategy’ for entering a guilty plea is ill-advised and should be abandoned.” ABA Guidelines § 11.6.2 cmt. n. 2. (emphasis in original) (quoting Dept, of Public Advocacy, KENTUCKY PUBLIC ADVOCATE DEATH PENALTY MANUAL, 328-33 (1983)). Further, “[i]f no written guarantee can be obtained that death will not be imposed following a plea of guilty, counsel should be extremely reluctant to participate in a waiver of the client’s trial rights.” Id. § 11. 6.3 cmt.; see also id. § 11. 6.2 cmt. (“Counsel should insist that no plea to an offense for which the death penalty can be imposed will be considered without a written guarantee, binding on the court or other final sentencer, that death will not be imposed.”).
“[I]n a capital case, counsel must consider in conjunction both the guilt and penalty phases in determining how best to proceed.” Florida v. Nixon, 543 U.S. 175, 192, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004). Donald Dawson, one of Hodges’s trial attorneys, testified in the post-conviction proceeding in state trial court that the decision to have Hodges plead guilty was made during the weekend prior to trial when the attorneys “sat down and pretty much saw the guilt-innocence phase as hopeless.” J.A. at 1745. The attorneys were “trying to figure out what was the way to limit the jurorsf’] bad feelings about us [a]nd [we] thought that by pleading guilty, we could give the defense some credibility.” Id. at 1746; see also id. (“[W]e [thought we] could get the jury to sort of be thankful to us that we didn’t make them sit through a guilt-innocence phase and we wouldn’t lose our own credibility by arguing the guilt or innocence and we would have a better chance to get a life verdict.”).
On its face, this appears to be the sort of strategic trial decision owed deference under Strickland. However, Dawson also testified that the defense team did “[n]ot adequately” think through the decision to plead guilty: “we never sat down and did an analysis of what are the benefits of going to trial, what are the deficits and where did that iead us.” Id. Dawson testified that at the time of trial, the defense team had not read available literature setting out standards for adequate representation in capital cases. Id. at 1747. In particular, the attorneys were unfamiliar with “the advantages of putting [on] a *547 defense [in the guilt phase] consistent with your mitigation theory.” Id. They also failed to appreciate the advantages of “hav[ing] the jury ... have a chance to look at your client longer and find him guilty[,] [a]nd then decide [’]now that we find him guilty, let’s see ... [w]hat is the proper senteneing[’].” This would allow the jury to not view the penalty phase as its only opportunity to pass judgment on the defendant’s actions. Id. at 1748; see also id. at 1841-43 (post-conviction hearing testimony of Michael Terry). The attorneys conducted no legal research into proper considerations in deciding whether to plead guilty, and did not weigh the possible benefits of putting on a case at the guilt phase of trial. Id. at 1748-1751; see also id. at 1839 (testimony of Michael Terry).
Dawson also testified that nearly all of the evidence that he and the other attorneys hoped to keep out by pleading guilty came in anyway at the sentencing phase, as should have been clear from an analysis of Tennessee law. Id. at 1752-53. Finally, Dawson stated that when he advised Hodges to plead guilty, the attorneys had “totally forgotten” about the third count of the indictment, aggravated robbery, a conviction of which constituted an aggravating factor for purposes of the penalty phase. Id. at 1756-57. In fact, Dawson did not “recall having talked to Mr. Hodges at all about pleading to the robbery.” Id. at 1757. Both Dawson and co-trial-counsel Michael Terry stated that pleading guilty was a mistake. Id. at 1755, 1762-63, 1842. Terry stated that he “would not plead a capital defendant guilty again in any case.” Id. at 1842.
Additionally, in the post-conviction hearing,, the court heard testimony from David Keefe, chief counsel for the capital division of the Tennessee District Public Defender’s Conference, who examined the conduct of Hodges’s trial counsel at the request of Hodges’s post-conviction attorneys. Keefe testified that he “believed the decision to plead guilty was wrong and hastily made. He opined that, by pleading guilty, the defense team confused the jury and lost an array of appellate issues.” Hodges, 2000 WL 1562865, at *10. Thus, although the decision to plead guilty was indeed a “strategic” decision designed to curry favor with the jury and limit the prosecution’s presentation of evidence, it was not intelligently made based on a weighing of the advantages and disadvantages of going to trial in the guilt phase, and was made without reference to secondary authorities providing standards for representation in death penalty cases. Further, the strategy was ill-designed to achieve one of its primary aims: limiting presentation of damaging evidence about the crime. Therefore, advising Hodges to plead guilty was inconsistent with the prevailing standard of competent representation in death penalty cases.
Post v. Bradshaw, 621 F.3d 406 (6th Cir.2010), discussed by the majority, is distinguishable. In Post, the defendant “refused to plead guilty, despite the State’s offer of a life sentence in return for a guilty plea.” Id. at 417. The case addressed the question whether the decision to enter a no-contest plea and to submit the penalty phase to a three-judge panel rather than a jury was objectively reasonable. The court concluded that the defendant’s weak mitigation evidence made the attorneys’ decision to forgo the right to a penalty-phase jury reasonable. Id. The Post court thus stated that “Post’s counsel were between a rock and a hard place in determining the best way to spare him a death sentence, given the overwhelming evidence of his guilt, his numerous confessions, and his refusal to plead guilty.” Id. at 418. Although these considerations are similar to those facing Hodges’s attorneys, *548 the Post decision does not suggest that defense counsel failed to appreciate the import of their decision. Indeed, the opinion indicates that counsel weighed the pros and cons of pleading no contest and putting the case before a three-judge panel instead of a jury. Id. Further, part of the rationale advanced by the Post court in justifying counsel’s decision was that “[b]y pleading no contest, [Post] would ‘avoid[ ] the ordeal’ of a guilt phase and have his sentence ‘determined without the sentencing court hearing all of the adverse testimony that would he produced at trial.’ ” Id. at 417 (quoting ABA Standards for Criminal Justice 4-6.1 cmt. (2d ed. 1980) (“The Defense Function”) (emphasis and third bracket added by Post)). Although Hodges’s defense team intended their decision to plead guilty to have the same effect, in reality nearly all of the testimony that would have been introduced at trial was introduced during the penalty phase. The miscalculation was not a matter of a sound decision turning out to be a mistake in hindsight. Rather, the decision had no legal support and was clearly a mistake in the first place. Hodges’s attorneys hoped that pleading guilty would be a beneficial strategy, but had little sound reasoning behind this belief. See Post, 621 F.3d at 428 (Cole, J., dissenting) (“I believe that the Constitution requires attorneys to make strategic judgments based on something more concrete than unsubstantiated hope, especially when their client’s life hangs in the balance.”).
Nixon is also distinguishable. In Nixon, defense counsel was faced with overwhelming evidence of Nixon’s guilt. After a failed attempt to negotiate a guilty plea in exchange for the prosecutor dropping the death penalty, defense counsel “concluded that the best strategy would be to concede guilt, thereby preserving his credibility in urging leniency during the penalty phase.” Nixon, 543 U.S. at 181, 125 S.Ct. 551. Instead of advising his client to enter a guilty plea, however, defense counsel decided to proceed to the guilt phase of trial, but to concede Nixon’s guilt to the jury. In opening statement, defense counsel “acknowledged Nixon’s guilt and urged the jury to focus on the penalty phase.” Id. at 182, 125 S.Ct. 551. The prosecution introduced extensive evidence of Nixon’s guilt during the guilt phase. Defense counsel “cross-examined [the prosecution’s] witnesses only when he felt then-statements needed clarification, ... and he did not present a defense case.” Id. at 183, 125 S.Ct. 551. He also objected to some evidence as unduly prejudicial. “In his closing argument, [defense counsel] again conceded Nixon’s guilt, and reminded the jury of the importance of the penalty phase.” Id. (internal citation omitted). The jury found Nixon guilty, and the case proceeded to the penalty phase, at which defense counsel presented testimony of a number of witnesses. Id. at 183-84, 125 S.Ct. 551. Importantly, “[t]he State presented little evidence during the penalty phase, simply incorporating its guilt-phase evidence by reference.” Id. at 184, 125 S.Cf. 551.
The Nixon Court did not address the issue presented here. In fact, counsel in Nixon did exactly what Hodges’s counsel now concede they should have done. In approving of Nixon’s attorney’s strategic decision, the Court discussed the downside to pleading guilty in lieu of going to trial at the guilt phase:
As [defense counsel] determined here, pleading guilty without a guarantee that the prosecution will recommend a life sentence holds little if any benefit for the defendant. See ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases § 10.9.2, Commentary (rev. ed.2003), reprinted in 31 Hofstra L.Rev. 913, 1045
*549 (2003) (“If no written guarantee can be obtained that death will not be imposed following a plea of guilty, counsel should be extremely reluctant to participate in a waiver of the client’s trial rights.”). Pleading guilty not only relinquishes trial rights, it increases the likelihood that the State will introduce aggressive evidence of guilt during the sentencing phase, so that the gruesome details of the crime are fresh in the jurors’ minds as they deliberate on the sentence. See [Gary] Goodpaster, [The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases], 58 N.Y.U. L.Rev. 299, 331[,] 558-59, 560-61 [ (1983) ].
543 U.S. at 191 n. 6, 125 S.Ct. 551 (citation altered). Had Hodges’s counsel acted as Nixon’s did by proceeding to trial and acknowledging guilt rather than pleading guilty, there would have been no constitutionally deficient performance.
Addressing Hodges’s Strickland claim, the Tennessee Court of Criminal Appeals reasoned:
Although it is true that the appellant ultimately gained nothing by pleading guilty, the record persuasively demonstrates that the appellant had little to gain by insisting upon a trial. It is undisputed that the evidence against the appellant was overwhelming and that his chances of acquittal were virtually nonexistent. Indeed, in advising the appellant, defense counsel was faced with two options: plead not guilty to the indictment and face a full trial; or plead guilty to the indictment and face limited evidence in a sentencing hearing with an opportunity to trade on his acceptance of his guilt and remorse. Confronted with the overwhelming evidence of the appellant’s guilt, defense counsel advised the appellant to plead guilty in the reasonable hope of obtaining leniency during the sentencing phase. Defense counsel reasonably believed that the jury would view the appellant’s guilty plea as an expression of remorse warranting a less severe sentence than that imposed upon a defendant who protests his innocence in the face of overwhelming evidence of guilt. Moreover, by pleading guilty, the appellant eliminated the presentation to the jury of all of the evidence available to establish the appellant’s guilt of the murder. The hard callous facts behind the offenses, in essence, were desensitized by avoiding the guilt phase. The absence of an in-depth recitation of facts enabled the appellant to seek some sympathy from the jury in the face of mitigating evidence.
Hodges v. State, 2000 WL 1562865, at *20 (Tenn.Crim.App.2000). The court reasonably pointed to Hodges’s counsels’ “hope of obtaining leniency during the sentencing phase” as a legitimate justification for pleading guilty. Id. However, the other reasons advanced in support of counsels’ decision lack support in the record. Most of the evidence of the circumstances of the murder was allowed in the penalty phase, and the “hard callous facts behind the offense” were not “desensitized by avoiding the guilt phase.” Rather, those newly-presented facts were fresh in jurors’ minds when they deliberated over imposition of the death penalty. As Gary Goodpaster observed:
[G]oing through a guilt phase trial helps to segregate and distance from the sentencer the prosecution’s strongest case against the defendant. Were defendant simply to admit guilt and go straight to the penalty phase trial, the prosecution at that time would undoubtedly present much of what it otherwise would have presented during the guilt phase.
Goodpaster, 58 N.Y.U. L.Rev. at 331. Hodges’s counsel did not consider the ramifications of pleading guilty rather than *550 proceeding to the guilt phase of the trial. Much of the evidence they hoped to exclude was admissible under Tennessee law. Counsel admitted forgetting about the aggravated robbery charge, itself an aggravating factor once Hodges pleaded guilty. Although I am mindful of the deference due to the state court under AEDPA, I must conclude that the decision that counsel met minimum constitutional standards involved an unreasonable application ■ of clearly established federal law.
B. Prejudice
In order to demonstrate prejudice, “the defendant must show that there is a reasonable probability that, but for counsel’s errors, he would not have pleaded guilty and would have insisted on going to trial.” Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).[2]
The majority is correct that Hodges himself has never stated that, but for his counsel’s deficient advice, he would not have pleaded guilty and would have insisted on going to trial. Additionally, Hodges’s habeas petition alleged that counsel’s advice to plead guilty constituted ineffective assistance, but did not specifically state that, had counsel advised him otherwise, he would not have pleaded guilty. Hodges’s brief on appeal states simply that “where Mr. Hodges had nothing to gain by pleading guilty, he certainly would not have entered a guilty plea if his lawyers had given him accurate information — in fact, had Mr. Hodges’s lawyers done their research, they wouldn’t have advised Mr. Hodges to plead guilty at all.” (Opening Br. of Appellant 83.) However, this is not the typical guilty plea case.
As the majority correctly notes, Hodges was not protesting his innocence leading up to trial. Rather, he had admitted his guilt in one or more television interviews and in letters to the prosecution and the trial court (against the advice of counsel). See J.A. at 1704, 1786 (testimony of Donald Dawson). This certainly suggests that Hodges was ready to plead guilty,- and that he would have been convicted had he ■pleaded not guilty. That, however, does not settle the issue. The issue here is not whether counsel were competent in their assessment and advice regarding the likelihood of conviction at trial, but rather in advising that there were significant benefits to forgoing trial. See Griffin v. United States, 330 F.3d 733, 737 (6th Cir.2003) (noting that it is “easier to show prejudice in the guilty plea context” than in other contexts “because the claimant need only show a reasonable probability that he would have pleaded differently”).
In Hill, the Court stated that “where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether *551 the error ‘prejudiced’ the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea.” 474 U.S. at 59, 106 S.Ct. 366. Hodges’s claim here is not that counsel failed to investigate or discover potentially exculpatory evidence that would have led him to change his plea, so this language from Hill is not squarely on point. Hodges’s claim is, however, that counsel failed to adequately consider the benefits of going to trial, and based their decision to advise him to plead guilty on an erroneous understanding of the consequences of a guilty plea at sentencing and insufficient legal research and investigation into the proper conduct of a capital case. This parallels the reasoning of Hill. Hodges’s two primary trial attorneys both testified that had they been aware of the proper standards for death penalty representation and had they accurately considered the drawbacks to pleading guilty, they would have advised Hodges to go to trial. J.A. at 1755, 1842. Thus, there is compelling evidence that counsel would have “changed [their] recommendation as to the plea.” Hill, 474 U.S. at 59, 106 S.Ct. 366.
The ultimate question under Strickland and Hill is whether the defendant has “established the reasonable probability that he would not have entered his plea but for his counsel’s deficiency.” Premo v. Moore, — U.S. -, 131 S.Ct. 733, 744, 178 L.Ed.2d 649 (2011) (emphasis added). Although Hodges has not stated under oath that he would not have pleaded guilty if his counsel had advised against it, counsel’s testimony that they would have advised him against pleading guilty establishes the requisite “reasonable probability” of a different outcome. This is not a case where the decision to plead guilty or not guilty was based on the likelihood of conviction versus acquittal. Rather, the choice was made on the likely effect of the choice on the outcome of the penalty phase, and it is clear that counsel’s advice in this regard was constitutionally ineffective. Had Hodges’s counsel advised him to plead not guilty, there is no reason to think he would not have heeded their advice. His conduct during the penalty phase, including taking the stand to provide testimony about his background in order to establish mitigating factors, demonstrates that he preferred a sentence of life imprisonment over- death. Had his counsel informed him that the better strategy for achieving this outcome was to plead not guilty and go to trial in the guilt phase, there is more than a reasonable probability that Hodges would have taken their advice.
In sum, although the Supreme Court recently cautioned that “hindsight cannot suffice for relief when counsel’s choices [to advise the defendant to plead guilty] were reasonable and legitimate based on predictions of how the trial would proceed,” and that “[t]here is a most substantial burden on the claimant to show ineffective assistance” in that situation, Premo, 131 S.Ct. at 745, counsels’ choices here were based on.unreasonable predictions about how the penalty phase would proceed, particularly about how pleading guilty would affect the prosecution’s ability to present damaging evidence about the details of the crime, and a complete failure to consider the benefits of going through the guilt phase. Further, Hodges has made an adequate showing of prejudice.
Because I conclude that the state court unreasonably applied Strickland, I respectfully dissent from Part III of the majority’s opinion and would grant Hodges’s petition for habeas corpus on this issue:

. ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases (1989), available a: http://www. americanbar.org/content/dam/aba/ migrated/DeathPenalty/RepresentationProject/PublicDocuments/1989Guidelines. authcheckdam.pdf

. I do not join in the majority’s characterization of Rayner v. Mills, 685 F.3d 631 (6th Cir.2012), as contrary to the Supreme Court’s holding in Harrington v. Richter, - U.S. -, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). The majority does not address Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), and Rompilla v. Beard, 545 U.S. 374, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005), which Richter did not purport to overrule. In Wiggins, the Supreme Court stated that its "review [was] not circumscribed by a state court conclusion with respect to prejudice, as neither of the state courts below reached this prong of the Strickland analysis.” Wiggins, 539 U.S. at 534, 123 S.Ct. 2527; see Rompilla, 545 U.S. at 390, 125 S.Ct. 2456 ("Because the state courts found the representation adequate, they never reached the issue of prejudice, ... and so we examine this element of the Strickland claim de novo [.]”). Although there is obvious tension between Wiggins, Rompilla, and Richter, the panel's opinion in Rayner resolved this tension, see Rayner, 685 F.3d at 638-39, and its decision is consistent with decisions of our sister circuits. See Ferrell v. Hall, 640 F.3d 1199, 1224 (11th Cir.2011); Sussman v. Jenkins, 642 F.3d 532, 533-34 (7th Cir.2011) (Ripple, J., in chambers).