# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cr. ID No. 2006003477 A&B |
| | ) | |
| MARKUS R. DAVIS, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: October 18, 2023
Decided: January 31, 2024

## COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF SHOULD BE DENIED AND RULE 61 COUNSEL'S MOTION TO WITHDRAW SHOULD BE GRANTED AND MOTION FOR CORRECTION OF SENTENCE SHOULD BE DENIED

Jillian L. Schroeder, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Matthew C. Buckworth, Esquire, Rule 61 Attorney for Defendant Markus Davis

SALOMONE, Commissioner

This 31st day of January 2024, upon consideration of Defendant's Motion for Postconviction Relief, it appears to the Court that:

## BACKGROUND, FACTS AND PROCEDURAL HISTORY

On June 9, 2020, officers from the Wilmington police department observed a green Chevrolet Malibu operated by Defendant Markus R. Davis (the "Defendant" or "Davis") traveling northbound on Thatcher Street.[1]  After the vehicle failed to properly signal the required distance prior to making a right turn, the police attempted to conduct a traffic stop, but Davis disregarded the officer's signal and fled the scene.  After a short vehicular pursuit by the police, Davis lost control of his car and crashed it onto a curb.  Thereafter, he exited his vehicle and fled by foot through a field with tall, untrimmed grass approximately three feet in height.  While giving chase, one of the officers observed the Defendant reach with both hands towards the front of his waistband while he was running.  Shortly thereafter Davis encountered a fence line and compiled with officer's commands to get on the ground. He was then taken into custody without further incident.

When the police transport unit arrived at the scene, Davis called out to a nearby acquaintance that had gathered among a crowd of onlookers and made a hand gesture to him which seemed to indicate that Davis had tossed a gun in the field

---

[1] These general facts are taken from the Affidavit of Probable Cause, dated June 9, 2020, *State v. Markus R. Davis*, Delaware Superior Court Criminal Docket, ID No. 2006003477A at 1 (hereinafter, "D.I. __").

during the pursuit. Officers then canvassed the area and located a Taurus G3 9mm handgun within several feet of the area where the officers had taken Davis into custody.

On August 24, 2020, a grand jury indicted Davis for Disregarding a Police Officer's Signal, Possession of a Firearm During the Commission of a Felony ("PFDCF"), Possession of a Firearm by a Person Prohibited ("PFBPP"), Possession of Ammunition by a Person Prohibited ("PABPP"), Resisting Arrest, Driving a Vehicle while License is Suspended or Revoked and Failure to Use Turn Signal.[2]

At the onset of the case, Davis was represented by a public defender employed with the Office of Defense Services, but on December 2, 2020, Natalie Woloshin, Esquire ("Trial Counsel") filed a Motion for Substitution of Counsel, which the Court granted on December 28, 2020.[3] After several continuances, trial was scheduled to begin on September 27, 2021.[4] On September 20, 2021, Trial Counsel filed a Motion to Sever the PFBPP and PABPP charges from the underlying offenses.[5] The Court granted the motion on September 23, 2021.[6]

On the day trial was scheduled to begin, Davis entered a guilty plea to Disregarding a Police Officer's Signal and PFBPP.[7] The plea also resolved two

---

[2] D.I. 2.
[3] D.I. 9.
[4] D.I. 17.
[5] D.I. 18.
[6] D.I. 20.
[7] *See* September 27, 2021 Plea Colloquy Transcript, D.I. 41(hereinafter, "D.I. 41").

pending violations of probation, one for Attempted Robbery First and the other for Conspiracy Second Degree. At the conclusion of the plea colloquy, the Court found that Davis entered his plea knowingly, intelligently, and voluntarily.[8] On the same day he entered the plea, the Court sentenced Davis to (i) two years at Level V, suspended for one year Level III probation and a fine, for Disregarding a Police Officer's Signal and (ii) fifteen years at Level V, suspended after ten years at Level V, followed by descending levels of probation.[9] Due to his criminal history, which included two separate and distinct violent felony convictions, the ten years at Level V represented the minimum mandatory sentence on the PFBPP conviction.[10] Although the Defendant was eligible to be sentenced as a habitual offender, the State agreed not to pursue habitual offender status as part of the plea agreement.[11] All the remaining charges in the indictment were *nolle prossed*.[12]

Davis did not file a direct appeal of his conviction or sentence. On October 20, 2021, Davis filed a *pro se* Motion for Sentence Reduction/Modification asserting grounds related to COVID-19 and his addiction to pain killers which developed after

---

[8] D.I. 41 at 6-15.
[9] D.I. 41 at 23. Davis was also sentenced for the violations of probation the same day. For VN08103156 for Attempted Robbery, the Court sentenced Davis to 11 years at Level V, suspended for six months Level IV DOC discretion, followed by 18 months Level III probation, hold at Level V pending the availability of space at Level IV. For VN09020508 for Conspiracy Second, Davis was discharged as unimproved. *Id.* at 24.
[10] *See* 11 *Del. C.* §1448(e)(1)(c).
[11] D.I. 41 at 4.
[12] D.I. 41 at 3.

he had suffered a gunshot wound.[13]  On May 11, 2022, the Court denied Davis' Motion for a Sentence Reduction/Modification, noting that the minimum mandatory sentence on the PFBPP conviction may not be reduced or suspended.[14]

**RULE 61 MOTION AND**
**RULE 61 COUNSEL'S MOTION TO WITHDRAW**

On November 12, 2021, Davis filed his initial *pro se* Motion for Postconviction relief ("Initial Rule 61 Motion").[15]  On December 6, 2021, he filed an Amended Motion for Postconviction relief ("Amended Rule 61 Motion").[16]  On March 31, 2022, Trial Counsel filed an Affidavit responding to the claims asserted by Davis in his Amended Motion.[17]  On June 17, 2022, Davis filed a Second Amended Motion for Postconviction Relief ("Second Amended Rule 61 Motion").[18] The State filed its response on June 29, 2022.[19]  On July 20, 2022, the Court *sua sponte* ordered that counsel be appointed to assist the Defendant with his Motion for Postconviction Relief.[20]  On February 6, 2023, Matthew C. Buckworth, Esquire ("Rule 61 counsel"), was appointed to represent Davis in his Rule 61 motion.[21]

---

[13] D.I. 25.
[14] D.I. 35.
[15] D.I. 28.
[16] D.I. 30.
[17] D.I. 34.
[18] D.I. 36.  Each of the Initial Rule 61 Motion, Amended Rule 61 Motion and Second Amended Rule 61 Motion raises virtually identical claims and are collectively referred to herein as the "Rule 61 Motion."
[19] D.I. 37.
[20] D.I. 38.
[21] D.I. 44 at 4. (Rule 61 counsel's Memorandum in Support of Motion to Withdraw).

On June 1, 2023, assigned counsel filed a Motion to Withdraw as Postconviction Counsel pursuant to Superior Court Criminal Rule 61(e)(7).[22] Superior Court Criminal Rule 61(e)(7) provides that:

> If counsel considers the movant's claim to be so lacking in merit that counsel cannot ethically advocate it, and counsel is not aware of any other substantial ground for relief available to the movant, counsel may move to withdraw. The motion shall explain the factual and legal basis for counsel's opinion and shall give notice that the movant may file a response to the motion within 30 days of service of the motion upon the movant.

In the Motion to Withdraw, Rule 61 counsel represented that, after undertaking a thorough analysis of the Defendant's claims, Rule 61 counsel determined that the claims have no merit and that Rule 61 counsel cannot ethically advocate for any claim for relief.[23] The same day, Rule 61 counsel advised Davis of his Motion to Withdraw and advised Davis that he had the right to file a response thereto within 30 days, if the Defendant desired to do so.[24]

On September 13, 2023, Davis filed a *pro se* Motion for Correction of Illegal Sentence.[25] Shortly thereafter, on October 13, 2023, he filed an Amended Motion for Correction of Illegal Sentence.[26] On October 18, 2023, this matter was referred

---

[22] D.I. 43-44.

[23] *See* D.I. 44.

[24] D.I. 43. Both Trial Counsel and the State relied on their previous filings and did not amend their responses after Rule 61 counsel filed his Motion to Withdraw. *See* D.I. 45, 48-49. On August 28, 2023, Davis filed a letter addressed to the sentencing judge regarding the circumstances following his release. D.I. 46.

[25] D.I. 47.

[26] D.I. 50.

to the undersigned Commissioner to assist in the resolution of the Defendant's Rule 61 motion and Amended Motion for Correction of Illegal Sentence.[27]

In order to evaluate the Defendant's Rule 61 motion and to determine whether his Rule 61 counsel's motion to withdraw should be granted, the court should be satisfied that Rule 61 counsel made a conscientious examination of the record and the law for claims that could arguably support Davis' Rule 61 motion. In addition, the court should conduct its own review of the record in order to determine whether Davis' Rule 61 motion is without merit.[28]

## **DAVIS' CLAMS FOR POSTCONVICTION RELIEF**

Davis asserts two claims of ineffective assistance of counsel in his Rule 61 Motion which can be fairly summarized as follows:

**Claim 1: Counsel was Ineffective for Failing to File a Motion to Suppress**

In Claim 1, Davis asserts that Trial Counsel should have filed a motion to suppress the gun found at the scene at the time of the Defendant's arrest. Specifically, Davis states in his Initial Rule 61 Motion that he "asked counsel several times to file for a suppression hearing" and that "[s]uppression of evidence in this case could have been in my favor and proved my innocence."[29]

---

[27] D.I. 51.

[28] *Matos v. State*, 2015 WL 5719694, *2 (Del.).

[29] D.I. 28. In both his Amended Rule 61 Motion and Second Amended Rule 61 Motion, Davis restates this claim as follows: "I conversed with counsel (Natalie Woloshin) about matters that were never raised, nor filed on my behalf. I was denied a motion to suppress after mentioning, verbally and in writing on more than one occasion." D.I. 30.

**Claim 2: Counsel was Ineffective for Misleading the Defendant**

In Claim 2, Davis contends that Trial Counsel lied and mislead him throughout the course of her representation and, as a result, he suffered prejudice. Specifically, Davis asserts that "[a]fter going over my discovery with counsel (Natalie Woloshin) I was told I had a good case for trial, until the day of trial. I raised all these grounds to counsel, and I was led to believe I had no grounds to suppress, even told a motion to dismiss wasn't in my favor. None of these statements or assumptions were correct. I was misled and deceived by counsel."[30]

For the reasons set forth below, both claims raised in the Defendant's Rule 61 Motion were waived upon the entry of the plea. In addition, both of the claims are without merit.

## Davis' Claims Were Waived Upon the Entry of His Plea

A defendant is bound by his answers on the guilty plea form and by his testimony at the plea colloquy in the absence of clear and convincing evidence to the contrary.[31] In the subject action, the Truth-in-Sentencing Guilty Plea Form, Plea Agreement and plea colloquy reveal that Davis knowingly, voluntarily and intelligently entered a guilty plea.

---

[30] D.I. 36. In his Initial Rule 61 Motion, Davis stated that he "was lied to time after time by counsel (Natalie Woloshin) about factors of law, and what wasn't possible in [his] case" and states that he "had plenty of conversations with (Natalie Woloshin) concerning these matters" and each time was given "an excuse of why or why not. Upon further research it was all proven to be lies." D.I. 28.

[31] *State v. Harden,* 1998 WL 735879, *5 (Del. Super.); *State v. Stuart,* 2008 WL 4868658, *3 (Del. Super. 2008).

At the time of the plea, Davis represented that he had reviewed the plea agreement and Truth-in-Sentencing Guilty Plea Form with his attorney and that he understood that he was facing a prison term of 10 years minimum-mandatory.[32] He represented that he freely and voluntarily decided to plead guilty to the two charges comprising the plea agreement, that nobody made any promises as to what his sentence would be, and that nobody forced or threatened him to enter into the plea.[33] Through the plea colloquy, Davis admitted that he was guilty of the charges in the plea agreement.[34]

Davis also represented at the time of the plea that he was satisfied with his counsel's representation, that his counsel fully advised him of his rights, and that he understood the consequences of entering into his guilty plea.[35] The Court accepted the Defendant's guilty plea only after finding that he entered into his plea knowingly, intelligently and voluntarily.[36]

Upon a review of the record, the Court concurs with the findings of the trial judge. Davis entered his plea knowingly, intelligently and voluntarily. He has not presented any clear, contrary evidence to call into question his testimony at the plea colloquy, Plea Agreement or answers on the Truth-in-Sentencing Guilty Plea Form. Accordingly, Davis' valid guilty plea waived his right to challenge any alleged

---

[32] D.I. 41 at 6-15.
[33] *Id.*
[34] *Id.* at 13-15.
[35] *Id.* at 7-10.
[36] *Id.* at 15.

errors, deficiencies or defects occurring prior to the entry of his plea, even those of constitutional proportions.[37] The Defendant's valid guilty plea waived any right to test the strength of the State's evidence, the right to hear and question witnesses, the right to present evidence in his own defense, and the right to appeal, if convicted.

Both of Davis' claims presented herein stem from allegations of defects, errors, misconduct and deficiencies which existed at the time of the entry of the plea and sentence. As such, both of his claims presented herein were waived when he knowingly, freely and intelligently entered his plea.[38] While the inquiry should arguably end at this juncture, the Court will nevertheless address Davis' ineffective assistance of counsel claims directly.

## APPLICABLE LAW FOR POST CONVICTION RELIEF

**Rule 61 and Procedural Bars to Relief**

Before considering the merits of Davis' ineffective assistance of counsel claims, the Court must first determine whether there are any procedural bars to the Rule 61 Motion.[39] Pursuant to Super. Ct. Crim. R. 61(i)(3) and (4), any ground for relief that was not previously raised is deemed waived, and any claims that were formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas

---

[37] *Somerville v. State,* 703 A.2d 629, 632 (Del. 1997); *Modjica v. State,* 2009 WL 2426675 (Del. 2009); *Miller v. State*, 840 A.2d 1229, 1232 (Del. 2004).
[38] See, *Mills v. State,* 2016 WL 97494, at *3 (Del.).
[39] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

9

corpus proceeding, are thereafter barred.[40]   However, ineffective assistance of counsel claims cannot be raised at any earlier stage in the proceedings and are properly presented by way of a motion for postconviction relief.[41]

This is Petitioner's first motion for post-conviction relief and it was timely filed.[42]  No procedural bars prevent the Court from reviewing this Rule 61 Motion on the merits.

**Applicable Law Regarding Ineffective Assistance of Counsel Claims**

In order to prevail on an ineffective assistance of counsel claim, the defendant must meet the two-pronged *Strickland* test by showing that:  (1) counsel performed at a level "below an objective standard of reasonableness" and that, (2) the deficient performance prejudiced the defense.[43]   The first prong requires the defendant to show by a preponderance of the evidence that defense counsel was not reasonably competent, while the second prong requires him to show that there is a reasonable probability that, but for defense counsel's unprofessional errors, the outcome of the proceedings would have been different.[44]

In the context of a plea challenge, it is not sufficient for the defendant to simply claim that his counsel was deficient.  The defendant must also establish that

---

[40] *See* Super. Ct. Crim. R. 61(i)(5) and (d)(2)(i), (ii).
[41] *Whittle v. State*, 2016 WL 2585904, at *3 (Del. Apr. 28, 2016); *State v. Evan-Mayes*, 2016 WL 4502303, at *2 (Del. Super. Aug. 25, 2016).
[42] *See* Super. Ct. Crim. R. 61(i)(1) (motion must be filed within one year of when conviction becomes final); Super. Ct. Crim. R. 61(m)(2) (If the defendant files a direct appeal, the judgment of conviction becomes final when the mandate is issued).
[43] *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).
[44] *Id.* at 687-88, 694.

10

counsel's actions were so prejudicial that there was a reasonable probability that, but for counsel's deficiencies, the defendant would not have taken a plea but would have insisted on going to trial.[45] The burden of proving ineffective assistance of counsel is on the defendant.[46] Mere allegations of ineffectiveness will not suffice; instead, a defendant must make and substantiate concrete allegations of actual prejudice.[47]

The United States Supreme Court has reiterated the high bar that must be surmounted to prevail on an ineffective assistance of counsel claim.[48] The United States Supreme Court cautioned that in reviewing ineffective assistance of counsel claims in the context of a plea bargain, the court must be mindful of the fact that "[p]lea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks."[49]

In this case, it is important to note that Davis derived a significant benefit from pleading guilty to just two counts in the indictment given that he was facing a number of additional felony charges. As part of the plea agreement, the State agreed to forgo filing a petition to have Davis declared a habitual offender and recommended that he be sentenced to the minimum mandatory time. Had the State prevailed at trial

---

[45] *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984); *Somerville v. State,* 703 A.2d 629, 631 (Del. 1997); *Premo v. Moore,* 131 S.Ct. 733, 739-744 (2011).
[46] *Oliver v. State,* 2001 WL 1751246 (Del.).
[47] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).
[48] *Premo v. Moore,* 131 S.Ct. 733, 739-744 (2011).
[49] *Id.* at 741.

11

and pursued habitual offender status, Davis would have been facing up to 40 years of Level V incarceration.[50] Davis' plea represented a rational choice given the pending charges, the evidence against him, and the possible sentences he was facing if convicted at trial.

**Specific Ineffective Assistance of Counsel Claims Raised By Davis**

Each specific claim raised by Davis will be addressed in turn.

### Claim 1: Counsel was Ineffective for Failing to File a Motion to Suppress

Davis claims that Trial Counsel was ineffective for failing to file a motion to suppress the gun found at the scene at the time of the Defendant's arrest. First, as previously noted, this claim was waived at the time he accepted his plea. Second, in addition to having waived this claim, this claim is without merit under *Strickland*.

The record reflects that Trial Counsel met with Davis on numerous occasions and had extensive conversations with him regarding the evidence in his case and the reasons why a motion to suppress had no merit.[51] Trial Counsel explained that in order to challenge the seizure of the firearm from the field, Davis would have to admit to ownership of the weapon.[52] Without admitting to ownership, he lacked

---

[50] D.I. 34 at 3.

[51] D.I. 34. According to Trial Counsel, "Davis believed that the decision in *United States v. Cyril McCray* was helpful to him and would have resulted in suppression of the firearm. In my letter to him dated August 17th, I fully explained to him why the case was inapplicable to his case." *Id.*; *see also* Initial Rule 61 Motion where Defendant acknowledges that he "had plenty of conversations with (Natalie Woloshin) concerning these matters. . ." D.I. 28.

[52] D.I. 34 at 2.

standing to challenge the seizure.[53] Possession of the weapon was the crux of the case against Davis and potentially created problems for the State at trial given that the weapon was not found on the Defendant's person and the fact that his DNA was not found on the gun.[54] So, admitting to ownership of the weapon for purpose of filing a motion to suppress in this case would have been illogical as the admission of ownership would then be used against him at any subsequent trial.[55]

Trial Counsel makes clear in her affidavit that she was of the belief that a motion to suppress had no merit in Davis' case. Based on the foregoing, it is readily apparent to the Court that counsel also concluded that filing a motion to suppress was not in the Defendant's best interest and made the strategic choice not to pursue that route on behalf of her client. "If an attorney makes a strategic choice 'after thorough investigation of law and facts relevant to plausible options' that decision is 'virtually unchallengeable' . . . ."[56] The fact that Davis did not agree with Trial Counsel's analysis or her strategic decision making with respect to filing a motion to suppress does not render her conduct unreasonable under *Strickland*.[57] "Litigation decisions of this nature are within the province of counsel to decide and a

---

[53] *Id.*
[54] *Id.*
[55] *Id.*
[56] *Ploof v. State*, 75 A.3d 840, 852 (Del. Supr. 2013) (citing *Strickland v. Washington,* 466 U.S. 668, 690-91 (1984).
[57] *See State v. Tatum*, 2008 WL 2601390, at *2 (Del. Super. June 27, 2008) (holding that counsel's failure to file a suppression motion despite defendant's request that one be filed did not constitute ineffective assistance of counsel where counsel believed there were no meritorious grounds for the motion).

defendant's disagreement with that decision does not provide a basis for the Court to second guess counsel."[58] The Court finds that Trial Counsel's conduct was objectively reasonable under the circumstances and that Davis has failed to establish the first prong of the *Strickland* test with respect to Claim 1.

Davis' claim also fails under the second prong of *Strickland* as he has failed to demonstrate that had a suppression motion been filed, it would have granted, or that he would have otherwise been acquitted of the crimes charged. The Defendant asserts that the police did not have probable cause to initiate the traffic stop because he utilized his turn signal prior to making the turn, albeit not for long enough prior to making the turn. Even if an argument could be made that the initial traffic stop should not have occurred, the Defendant *fled from the police* after being stopped, which provided ample evidence to support the subsequent search of the field when coupled with what the police witnessed during the foot pursuit and the Defendant's hand gesture to his friend at the scene of the arrest. Given these facts, it is unlikely that Davis would have prevailed if a suppression motion had been filed on his behalf. Therefore, the Defendant has not presented any allegations of actual prejudice and, for those reasons discussed above, his claim fails.

---

[58] *Id.*

**Claim 2: Counsel was Ineffective for Misleading the Defendant**

Davis claims that Trial Counsel was ineffective because she lied to and/or misled the Defendant with respect to the applicable law and the possibilities for defending his case. As with Claim 1, Davis' second claim was waived at the time he accepted his plea. And, in addition to having waived this claim, it is also without merit under *Strickland*.

To some degree, this second claim is merely an extension of Davis' first claim as he is alleging that Trial Counsel led him to believe there were no meritorious grounds to support a motion to suppress—a conclusion with which he disagrees. However, the fact that Davis disagrees with Trial Counsel's analysis of the law and her conclusion does not make her statements to him tantamount to a lie. Nor does his disagreement with Trial Counsel's views of the applicable law transform his claim into a viable one for ineffective assistance of counsel. As previously discussed, matters of strategy or trial tactics are squarely within counsel's purview and the fact that Davis has a different view of the applicable law does not make her conduct unreasonable under *Strickland*.

For her part, Trial Counsel denies the claim that she lied to or misled the Defendant and the record supports her position.[59] Trial Counsel states that she

---

[59] D.I. 41 at 2.

reviewed the discovery with Davis and the State's witness list.[60] She explained the trial process to him, including the jury selection process and reviewed *voir dire* questions with him.[61] She interviewed a potential witness for trial identified by Davis, but found that her testimony would have been of little value in his defense and communicated the same to the Defendant.[62] She drove to the scene of the arrest and took photographs herself to use during trial.[63] She explained that the case would ultimately come down to a credibility determination by the jury because Davis was claiming he was not in the vicinity of where the gun was recovered by the police.[64] With respect to the issue of credibility, she further advised Davis that his prior convictions would likely come into evidence and be considered by the jury in reaching its verdict.[65]

None of these communications with Davis were misleading in any way. In fact, it appears to the Court that Trial Counsel had fully prepared herself and her client for trial. All of Trial Counsel's conduct was objectively reasonable under *Strickland*. Davis' claim that he was misled or lied to by counsel is unsupported by the record and without merit under *Strickland*.

---

[60] *Id.*
[61] *Id.*
[62] *Id.*
[63] *Id.* at 2-3.
[64] *Id*.
[65] *Id.*

16

## Motion for Correction of Illegal Sentence

Davis contends that the sentence on his PFBPP conviction to which he received ten years of Level V incarceration is illegal. He filed the subject Rule 35(a) motion to correct this allegedly illegal sentence on October 13, 2023.[66] Davis seeks a modification of his sentence to "time served."

Davis argues that his sentence should be corrected because his indictment was defective. First, citing the Delaware Supreme Court decision in *Williams v. State*,[67] he argues that the indictment was defective because it failed to specifically incorporate the language of the "predicated felony" of Disregarding a Police Officer's Signal (Count I) into each of Counts II-VII. Second, he asserts that an indictment must be signed by a foreperson for it to become a true bill and claims his indictment was not. Both arguments are without merit.

Taking his second argument first, Davis' assertion is factually incorrect. The Defendant's indictment was signed by a foreperson, but the foreperson's name was redacted to protect that individual's identity as is the customary practice.

With respect to his first argument, Davis' reliance on *Williams* is misplaced and does not support his contention.[68] The indictment, as drafted, comports with the

---

[66] D.I. 50.

[67] 818 A.2d 906 (Del. 2002).

[68] *Id.* In *Williams*, the Delaware Supreme Court held that "where a burglary is alleged to be the felony on which the felony murder charge is predicated, the death that occurs must not only be 'in the course of' the burglary but also must be 'in furtherance of' the burglary. That is, the burglary must have an independent objective that the murder facilitates. Accordingly, if the intent of the

17

requirements of Delaware law. Superior Court Criminal Rule 7(c)(1) establishes the nature and content of what must be set forth in an indictment and provides, in pertinent part, that "[t]he indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. . . . Allegations made in one count may be incorporated by reference in another count." Davis' indictment, which incorporates by reference Count I for Disregarding a Police Officer's Signal in Count II for PFDCF, comports with the requirements of Superior Court Criminal Rule 7.[69]

Moreover, Davis' sentence was properly imposed. 11 *Del. C.* §1448(e)(1)(c) provides, in pertinent part, as follows:

> Notwithstanding any provision of this section or Code to the contrary, any person who is a prohibited person as described in this section and who knowingly possesses . . . a firearm . . . while so prohibited shall receive a minimum sentence of: Ten years of Level V, if the person has been convicted on 2 or more separate occasions of any violent felony.

Davis meets this statutory requirement because he was convicted of Attempted Robbery First on May 11, 2009 and Possession with Intent to Deliver a Narcotic

---

burglary was to commit murder, the death that occurred was not 'in furtherance of' the burglary— it was the intent of the burglary, as charged in the indictment here."

[69] Moreover, Superior Court Criminal Rule 7(c)(2) makes clear that a harmless error "in the citation or its omission shall not be ground for dismissal of the indictment or information or for reversal of a conviction if the error or omission did not mislead the defendant to the defendant's prejudice." Davis does not argue that his indictment was misleading or prejudicial nor could he as he clearly understood the nature of the charges against him as evidence by his responses during the plea colloquy.

Schedule II Controlled Substance on May 10, 2006, each of which is defined as a violent felony under Section 4201(c) of Title 11 of the Delaware Code. The Court properly sentenced him to the applicable ten-year minimum penalty as set forth in Section 1448 for felons convicted of PFBPP with two previous violent felony convictions.

There is no basis for a Rule 35(a) motion to correct an illegal sentence when the sentence imposed is allowed by statute.[70] Davis' sentence on his PFBPP conviction to ten years of Level V incarceration was not only allowed to be imposed by statute, but it was also required to be imposed. Davis' motion for correction of illegal sentence is without merit and should be denied.

---

[70] See, *Ward v. State,* 567 A.2d 1296, 1297 (Del. 1989).

19

## CONCLUSION

After a careful review of the record, the Court concludes that Davis' Rule 61 motion is without merit. The Court is also satisfied that Rule 61 counsel made a conscientious effort to examine the record and the law and has properly determined that Davis does not have a meritorious claim to be raised in his Rule 61 motion.

In light of the absence of any meritorious postconviction claims, Davis' Motion for Postconviction Relief should be **DENIED**, Rule 61 counsel's Motion to Withdraw should be **GRANTED** and Davis' Motion for Correction of an Illegal Sentence should be **DENIED**.

**IT IS SO RECOMMENDED.**

/S/ *Janine M. Salomone*
The Honorable Janine M. Salomone

oc: Prothonotary
cc: Matthew C. Buckworth, Esquire, Rule 61 counsel
Jillian Schroeder, Esquire, Deputy Attorney General
Natalie Woloshin, Esquire, Trial Counsel
Mr. Markus R. Davis